**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 25-cv-00662-TPO**

Zayo Group, LLC,

Plaintiff,

v.

Harvey Sender, as Trustee on behalf of Debtor iBridge Cloud Solutions, Inc.,
iBridge Cloud Technologies, Inc.,
iBridge Technology Solutions, Inc.,
Gold Tailings Investments, LLC,
Data Center Facilities Management, Inc., and
Paul Smitham,

Defendants.

---

**ZAYO GROUP, LLC'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff Zayo Group, LLC ("Zayo"), by and through its undersigned counsel, submits this First Amended Complaint and Jury Demand against iBridge Cloud Solutions, Inc., iBridge Cloud Technologies, Inc., iBridge Technology Solutions, Inc., Gold Tailings Investments, LLC, Data Center Facilities Management, Inc., and Paul Smitham, as follows.

**PARTIES**

1. Zayo is, and at all relevant times was, a limited liability company organized and existing under the laws of the State of Colorado.

2. iBridge Cloud Solutions, Inc. is, and at all relevant times was, a corporation company organized and existing under the laws of the State of Nevada. At all relevant times, iBridge Cloud Solutions conducted business in Colorado. On March 14, 2024, iBridge Cloud

Solutions filed a Chapter 7 Voluntary Petition for Bankruptcy in the United States Bankruptcy Court for the District of Colorado, Case No. 24-11105-KHT.

3. iBridge Cloud Technologies, Inc. is, and at all relevant times was, a corporation company organized and existing under the laws of the State of California. At all relevant times, iBridge Cloud Technologies conducted business in Colorado.

4. iBridge Technology Solutions, Inc. is, and at all relevant times was, a corporation company organized and existing under the laws of the State of Delaware. At all relevant times, iBridge Technology Solutions conducted business in Colorado.

5. Gold Tailings Investments, LLC ("Gold Tailings") is, and at all relevant times was, a corporation company organized and existing under the laws of the State of California. At all relevant times, Gold Tailings conducted business in Colorado.

6. Data Center Facilities Management, Inc. ("DCFM") is, and at all relevant times was, a corporation company organized and existing under the laws of the State of California. At all relevant times, DCFM conducted business in Colorado.

7. Paul Smitham ("Smitham") is, and at all relevant times was, an individual residing in the State of California and conducting business in Colorado.

8. iBridge Cloud Solutions, iBridge Cloud Technologies, iBridge Technology Solutions, Gold Tailings, DCFM, and Smitham are referred to collectively as "Defendants."

## ALTER EGO

9. Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, each Defendant was the alter ego of each other Defendant. On information and belief, Plaintiff alleges that, at all relevant times: (i) Defendants shared common ownership; (ii) iBridge

Cloud Solutions was not adequately capitalized; (iii) Defendants' assets, liabilities, and income were comingled with each other; (iv) there exists a unity of interest and ownership between Defendants such that separate personalities between them do not truly exist; and (v) there would be an inequitable result if the liability subject of this action were deemed only the liability of iBridge Cloud Solutions.

10. Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege and would promote injustice.

11. On August 27, 2024, pursuant to Federal Rule of Bankruptcy Procedure, Rule 2004, Plaintiff conducted Smitham's examination on behalf of iBridge Cloud Solutions. A true and correct copy of relevant portions of the examination transcript, with certain portions highlighted, is attached hereto as Exhibit A and incorporated herein by reference.

**iBridge Cloud Solutions, Inc.**

12. Defendants describe themselves as a strategic partner for customers in the public and private sectors, providing custom services and products to solve its customers' managed services challenges, including the design and implementation of technology solutions to address those challenges.

13. iBridge Cloud Solutions was formed on October 18, 2016.

14. At all times, Smitham has been the President of iBridge Cloud Solutions.

15. At all relevant times, iBridge Cloud Solution's primary business location was 2851 Gold Tailings Court, Rancho Cordova, California 95670 (the "Gold Tailings Property"). *See* Ex. A, Smitham Dep. Tr. at 57:22-24.

16. At all relevant times, iBridge Cloud Solutions conducted substantial business in the State of California, including having its primary business located in the State of California. Notwithstanding such fact, iBridge Cloud Solutions never registered to conduct business in the State of California with the California Secretary of State. In contrast, iBridge Cloud Technologies did register to conduct business in the State of California.

**iBridge Cloud Technologies, Inc.**

17. iBridge Cloud Technologies was formed on May 28, 2021.

18. At all times, Smitham has been the Chief Executive Officer of iBridge Cloud Technologies.

19. At all relevant times, iBridge Cloud Technologies' primary business location was the "Gold Tailings Property. *See* Ex. A, Smitham Dep. Tr. at 57:22-24.

20. iBridge Cloud Technologies currently uses a data center owned by Gold Tailings. *See id.* at 47:13-15.

**iBridge Technology Solutions, Inc.**

21. iBridge Technology Solutions was formed on May 28, 2021.

22. At all times, Smitham has been the Chief Executive Officer of iBridge Technology Solutions.

**Gold Tailings Investments, LLC**

23. Gold Tailings was formed in 2016.

24. At all times, Smitham has been the managing member of Gold Tailings. *See* Ex. A, Smitham Dep. Tr. at 47:19-24.

25. At all relevant times, Gold Tailings was the lessee of the Gold Tailings Property.

*See* Ex. A, Smitham Dep. Tr. at 58:7-25.

**Data Center Facilities Management, Inc.**

26. DCFM was formed on May 3, 2024.

27. At all times, Smitham was the President of DCFM.

**Commingling**

28. In December 2021, iBridge Cloud Technologies transferred $50,000 to iBridge Cloud Solutions.

29. In December 2021, iBridge Cloud Solutions transferred $35,000 to iBridge Cloud Technologies.

30. In January 2022, iBridge Cloud Solutions paid $1,310 to Ronald Melchin. Mr. Melchin is the agent for service of process for Gold Tailings.

31. In February 2022, iBridge Cloud Technologies transferred $340,000 to iBridge Cloud Solutions. Mr. Smitham testified that this amount was to settle iBridge Cloud Solution's dispute with Enterprise Networking Solutions, Inc. ("ENS").

32. In February 2022, consistent with Mr. Smitham's testimony, iBridge Cloud Solutions transferred $351,040 to ENS. Smitham is the former owner of ENS.

33. In March 2022, iBridge Cloud Solutions paid $50,000 to its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo ("Mintz").

34. In August 2022, iBridge Cloud Solutions paid $40,886 to Mintz.

35. In February 2023, iBridge Cloud Technologies transferred $40,000 to iBridge Cloud Solutions.

36. In February 2023, iBridge Cloud Solutions paid $40,750.70 to Mintz.

37. In March 2023, iBridge Cloud Technologies transferred $45,600 to iBridge Cloud Solutions.

38. In March 2023, iBridge Cloud Solutions paid $24,746.65 to Mintz.

39. In April 2023, iBridge Cloud Technologies transferred $15,000 to iBridge Cloud Solutions.

40. In May 2023, iBridge Cloud Technologies transferred $6,150 to iBridge Cloud Solutions.

41. In September 2023, iBridge Cloud Technologies transferred $38,000 to iBridge Cloud Solutions.

42. In September 2023, iBridge Cloud Solutions paid $36,443.65 to Mintz.

43. In December 2023, iBridge Cloud Technologies transferred $10,000 to iBridge Cloud Solutions.

44. In December 2023, iBridge Cloud Solutions paid $10,000 to its new attorneys, Sheridan Garner LLP ("Sheridan").

**Inter-Company Contracts**

45. In 2022, iBridge Cloud Solutions and iBridge Cloud Technologies entered into a Teaming Agreement. Smitham signed the agreement on behalf of both iBridge Cloud Solutions and iBridge Cloud Technologies. The agreement was signed electronically. On behalf of both iBridge Cloud Solutions and iBridge Cloud Technologies, Smitham was emailed the document at psmitham@ibridgecloud.com.

46. Smitham testified that iBridge Cloud Solutions and iBridge Cloud Technologies "back dated" the agreement. Specifically, even though the agreement is dated as of August 2021,

it was not signed until 2022.

47. In 2022, iBridge Cloud Solutions and DCFM (also owned by Smitham at the time) entered into that certain Teaming Agreement. *See* Ex. A, Smitham Dep. Tr. at 54:10-17. Smitham testified that DCFM is the management side of the data center that Gold Tailings owns and iBridge Cloud Solutions wanted to do consulting work with DCFM. *See id.* at 54:23-55:6. Smitham signed the agreement on behalf of both iBridge Cloud Solutions and DCFM. The agreement was signed electronically. On behalf of both iBridge Cloud Solutions and DCFM, Smitham was emailed the document at psmitham@ibridgecloud.com.

48. Smitham testified that iBridge Cloud Solutions and DCFM "back dated" the agreement. Specifically, even though the agreement is dated as of August 2021, it was not signed until 2022.

**<u>Inter-Company Loans</u>**

49. Smitham testified that several "loans" were made between iBridge Cloud Solutions, iBridge Cloud Technologies, and Gold Tailings. *See* Ex. A, Dep. Tr. at 66:2-23, 73-74:23-7.

50. Smitham further testified that no promissory notes or other documents evidence the loans, nor was any interest charged or paid. *See id.* at 66-67:24-4.

51. Smitham was the only person involved in the "loans" between iBridge Cloud Solutions, iBridge Cloud Technologies, and Gold Tailings, other than Smitham's daughter, Faith Smitham. *See id.* at 67:5-18.

52. In February 2022, iBridge Cloud Technologies transferred $340,000 to iBridge Cloud Solutions. Smitham testified that iBridge Cloud Technologies made this transfer so that

iBridge Cloud Solutions could resolve its dispute with ENS. *See id.* at 68-69:21-15.

53. Smitham testified that Gold Tailings also made "loans" to iBridge Cloud Solutions, yet no promissory notes or other documents evidence the "loans", nor was any interest charged or paid. *See id.* at 73-74:23-7.

**Single Business Enterprise**

54. Smitham refers to iBridge Cloud Solutions, iBridge Cloud Technologies, iBridge Technology Solutions, and Gold Tailings as "partner companies". *See id.* at 52:3-6.

55. iBridge Cloud Solutions has never had any customer other than iBridge Cloud Technologies, iBridge Technology Solutions, and Gold Tailings. *See id.* at 48-49:23-1.

56. iBridge Cloud Solutions has never had any employees. *See id.* at 59:9-10.

57. At all relevant times through the present, iBridge Cloud Solutions owns and maintains the website www.ibridgecloud.com.

58. The website states:

> While you may not be familiar with iBRIDGE, we previously operated as Enterprise Networking Solutions (ENS) for over twenty-two years, our commitment to delivering top-notch solutions is unparalleled.

59. iBridge Cloud Solutions registered www.ibridgecloud.com in 2018. iBridge Cloud Solutions existed at the time of Defendants' purchase of the domain. Neither iBridge Cloud Technologies nor iBridge Technology Solutions had yet been created.

60. Smitham testified that he did not have any email address for iBridge Cloud Solutions. *See id.* at 60:19-24. He further testified that any emails sent to or from psmitham@ibridgecloud.com were sent and received on behalf of iBridge Cloud Technologies. *See id.* at 60-61:25-3.

61. Smitham, on behalf of iBridge Cloud Solutions, communicated using Smitham's ENS-related email address, psmitham@ens-inc.com.

62. iBridge Cloud Solutions sent invoices to Gold Tailings. iBridge Cloud Solutions sent such invoices from the email address ar@ibridgecloud.com. iBridge Cloud Solutions sent such invoices to Gold Tailings at the email address ap@ibridgecloud.com. In other words, both iBridge Cloud Solutions and Gold Tailings used @ibridgecloud.com email addresses.

63. iBridge Cloud Solutions sent invoices to iBridge Cloud Technologies. iBridge Cloud Solutions sent such invoices to iBridge Cloud Technologies at the email address ap@ibridgecloud.com. In other words, both iBridge Cloud Solutions and iBridge Cloud Technologies used @ibridgecloud.com email addresses.

64. In September 2021, Smitham decided to "shut down" iBridge Cloud Solutions. *See id.* at 53:15-24.

65. More than two years, later, in November 2023, iBridge Cloud Solutions offered to pay $750,000 to Plaintiff, and to purchase $3,400,000 worth of new services from Plaintiff.

66. Thereafter, in February 2024, iBridge Cloud Solutions offered to pay $500,000 to Plaintiff.

67. To this day, Defendants continue to own and maintain the website www.ibridgecloud.com.

68. In iBridge Cloud Solutions' bankruptcy case, iBridge Cloud Solutions indicates that, except for Plaintiff, iBridge Cloud Solutions' only creditors are iBridge Cloud Technologies and Gold Tailings.

**Tax Returns**

69. iBridge Cloud Solutions' 2019 federal tax return indicates:

- Gross sales of $102,000.
- No net operating loss carryover.
- No accounts payable.

70. iBridge Cloud Solutions' 2020 federal tax return indicates:

- Gross sales of $85,000.
- Net operating loss carryover of $371,350.
- Accounts payable of $391,911.

71. iBridge Cloud Solutions' 2022 federal tax return indicates:

- Gross sales of $50,000.
- Net operating loss carryover of $109,597.
- Accounts payable of $12,191.

**Shared Office Location**

72. At all relevant times, iBridge Cloud Solutions, iBridge Cloud Technologies, iBridge Technology Solutions, and Gold Tailings shared the same primary business location -- 2851 Gold Tailings Court, Rancho Cordova, California 95670 (i.e., the Gold Tailings Property). *See* Ex. A, Dep. Tr. at 57:22-24.

73. The Gold Tailings Property was leased by Gold Tailings. *See id.* at 58:7-25.

74. Neither iBridge Cloud Solutions nor iBridge Cloud Technologies paid anything to Gold Tailings for their use of the Gold Tailings Property. *See id.* at 58:7-25.

75. On information and belief, iBridge Technology Solutions did not pay anything to

Gold Tailings for its use of the Gold Tailings Property.

## GENERAL ALLEGATIONS

76. Plaintiff is a communications infrastructure company that provides fiber optic cables, network services, and data transmission services.

77. Defendants describe themselves as a strategic partner for customers in the public and private sectors, providing custom services and products to solve its customers' managed services challenges, including the design and implementation of technology solutions to address those challenges.

78. In 2019, iBridge Cloud Solutions desired to purchase products and services from Plaintiff to be provided in the City and County of Denver. To facilitate and govern the terms of Defendants' purchases, the parties entered into the Master Customer Agreement, a true and correct copy of which is attached hereto as Exhibit B.

79. Thereafter, iBridge Cloud Solutions submitted numerous service orders to Plaintiff (collectively, the "Service Orders"), including Service Order Nos. 1393345, 1470129, 1470151, 1470158, 1478586, 1551443, 1693735, 1807032, 1842629, 1842647, 1842667, and 1940157. True and correct copies of the Service Orders are attached hereto as Exhibit C and incorporated herein by reference.

80. The Service Orders are governed by the terms of the Master Customer Agreement.

81. Following receipt of each Service Order, Plaintiff provided the goods and services purchased by iBridge Cloud Solutions.

82. Plaintiff regularly delivered invoices to iBridge Cloud Solutions detailing the

amounts owed by iBridge Cloud Solutions.

83. iBridge Cloud Solutions failed to pay certain amounts owing pursuant to the terms of the Service Orders and Master Customer Agreement.

84. Plaintiff repeatedly demanded payment, but iBridge Cloud Solutions failed and refused to pay the amount owing.

85. Therefore, in 2021, to resolve the past due amounts owing by iBridge Cloud Solutions and modify the parties' relationship going forward, the parties entered into the iBridge Payment Restructure Agreement (the "Restructure Agreement"), a true and correct copy of which is attached hereto as Exhibit D and incorporated herein by reference.

86. The Restructure Agreement requires iBridge Cloud Solutions to pay certain amounts to Plaintiff.

87. Following entry into the Restructure Agreement, Plaintiff fulfilled its obligations under the Restructure Agreement.

88. iBridge Cloud Solutions defaulted under the Restructure Agreement by failing to make certain payments to Plaintiff.

89. Plaintiff repeatedly demanded payment, but iBridge Cloud Solutions failed and refused to pay the amount owing.

90. True and correct copies of the unpaid invoices are attached hereto as Exhibit E and incorporated herein by reference.

91. As of April 25, 2025, Defendants owe Plaintiff in excess of $11 million pursuant to the terms of the Service Orders, Master Customer Agreement, and Restructure Agreement.

92. Plaintiff has performed all of its obligations to Defendants.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

93. Plaintiff incorporates by reference its prior allegations as if fully set forth herein.

94. Plaintiff timely rendered all performance required of it under the Service Orders, Master Customer Agreement, and Restructure Agreement, and no performance by iBridge Cloud Solutions has been excused.

95. iBridge Cloud Solutions defaulted under the terms of the parties' agreements as more fully described above. Such defaults constitute material breaches of the obligations created by the parties' agreements.

96. iBridge Cloud Technologies, iBridge Technology Solutions, Gold Tailings, DCFM, and Smitham are liable to Plaintiff for iBridge Cloud Solutions' breaches under an alter ego theory of liability. As set forth in detail above, (i) Defendants shared common ownership; (ii) iBridge Cloud Solutions was not adequately capitalized; (iii) Defendants' assets, liabilities, and income were comingled with each other; (iv) there exists a unity of interest and ownership between Defendants such that separate personalities between them do not truly exist; and (v) there would be an inequitable result if the liability subject of this action were deemed only the liability of iBridge Cloud Solutions.

97. Plaintiff has demanded payment from iBridge Cloud Solutions. Despite this demand, iBridge Cloud Solutions has failed and refused, and continues to fail and refuse, to perform its obligations. As set forth above, iBridge Cloud Technologies, iBridge Technology Solutions, Gold Tailings, DCFM, and Smitham are liable to Plaintiff for iBridge Cloud Solutions' continuing breaches under an alter ego theory of liability.

98. As a direct and proximate result of iBridge Cloud Solutions' breaches of the

Parties' agreement, Plaintiff has been damaged in the amount to be determined at trial, plus interest, and attorney fees and costs as provided under the Master Customer Agreement. The remaining Defendants are liable to Plaintiff for the damages requested under the alter ego theory of liability.

**SECOND CLAIM FOR RELIEF**
**(Moneys Owed on Open Account)**

99. Plaintiff incorporates by reference its prior allegations as if fully set forth herein.

100. iBridge Cloud Solutions owes money to Plaintiff stemming from the parties' agreement, and the goods and services provided by Plaintiff to iBridge Cloud Solutions. iBridge Cloud Technologies, iBridge Technology Solutions, Gold Tailings, DCFM, and Smitham are liable to Plaintiff for iBridge Cloud Solutions' outstanding invoices under an alter ego theory of liability. As set forth in detail above, (i) Defendants shared common ownership; (ii) iBridge Cloud Solutions was not adequately capitalized; (iii) Defendants' assets, liabilities, and income were comingled with each other; (iv) there exists a unity of interest and ownership between Defendants such that separate personalities between them do not truly exist; and (v) there would be an inequitable result if the liability subject of this action were deemed only the liability of iBridge Cloud Solutions.

101. Plaintiff previously delivered numerous invoices and account statements to iBridge Cloud Solutions detailing the amounts owed by Defendants.

102. Defendants, by their words and conduct, have acknowledged the validity of the amounts demanded by Plaintiff.

103. Defendants, by their words and conduct, promised to pay the stated amount to Plaintiff.

104. Defendants have not paid the stated amount owed to Plaintiff.

105. As a result of the foregoing, Plaintiff is entitled to entry of a monetary judgment for amounts due on open account in an amount to be determined at trial, plus interest, attorney fees and costs as provided for under the Master Customer Agreement. All Defendants are liable to Plaintiff for the damages requested under the alter ego theory of liability.

**THIRD CLAIM FOR RELIEF**
**(Alter Ego Liability)**

106. Plaintiff incorporates by reference its prior allegations as if fully set forth herein.

107. As set forth above, each Defendant was the alter ego of each other Defendant, such that the corporation fiction that each Defendant is a separate entity does not exist.

108. Smitham is the owner of each Defendant.

109. iBridge Cloud Solutions was undercapitalized at times relevant to this action.

110. Defendants commingled assets, liabilities, and income as set forth in detail above.

111. Defendants all share a unity of interest and have the same ownership such that separate personalities and corporate forms do not truly exist.

112. Plaintiff has suffered damages as result of Defendants' breaches in the amount to be determined at trial, plus interest, and attorney fees and costs as provided under the Master Customer Agreement.

113. Plaintiff would suffer an inequitable result if Defendants were not held liable for the damages iBridge Cloud Solutions caused Plaintiff.

114. For these reasons, and those above, Defendants are liable for iBridge Cloud Solutions' breach of the parties' agreements and the claims asserted herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A. On the first claim for relief, that iBridge Cloud Solutions breached the parties' agreements identified herein and entry of a monetary judgment against Defendants, jointly and severally, in an amount to be determined at trial, plus interest, attorney fees and costs as provided for under the Master Customer Agreement;

B. On the second claim for relief, that iBridge Cloud Solutions owes Plaintiff monies owed under invoices and entry of a monetary judgment against Defendants, jointly and severally, in an amount to be determined at trial, plus interest, attorney fees and costs as provided for under the Master Customer Agreement; and

C. On the third claim for relief, that Defendants are jointly and severally liable to Plaintiff for iBridge Cloud Solutions' breaches of the parties' agreement under the alter ego theory of liability and entry of a monetary judgment against Defendants in an amount to be determined at trial, plus interest, attorney fees and costs as provided for under the Master Customer Agreement; and

D. Such additional and alternative relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted this 25th day of April, 2025.

*s/ Andrew P. Garnett*
Andrew P. Garnett, Reg. No. 45220
Nicholas Eaton, Reg. No. 49956
Garnett Powell Maximon Barlow & Farbes
1125 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 991-3344
andrew.garnett@garnettlegalgroup.com
nick.eaton@garnettlegalgroup.com

*Attorneys for Plaintiff/Counterclaim Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 25, 2025, a true and correct copy of the foregoing **ZAYO GROUP, LLC'S FIRST AMENDED COMPLAINT AND JURY DEMAND** was electronically filed using the Court's CM/ECF system, which will provide service to the following counsel of record.

Patrick D. Vellone
Jennifer E. Schlatter
Vandana S. Koelsch
Allen Vellone Wolf Helfrich & Factor P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
pvellone@allen-vellone.com
jschlatter@allen-vellone.com
vkoelsch@allen-vellone.com

*Attorneys for Defendants*

*s/ Tracy Williams*
Tracy Williams