**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Case No. 25-cv-00662-CNS-TPO**

Zayo Group, LLC,

Plaintiff,

vs.

Harvey Sender, as Trustee, on behalf of Debtor iBridge Cloud Solutions, Inc.,
iBridge Cloud Technologies, Inc.,
iBridge Technology Solutions, Inc.,
Gold Tailings Investments, LLC,
Data Center Facilities Management, Inc.,
Paul Smitham,

Defendants.

---

Harvey Sender, as Trustee, on behalf of Debtor iBridge Cloud Solutions, Inc.

Counterclaim Plaintiff,

v.

Zayo Group, LLC

Counterclaim Defendant.

---

**ZAYO GROUP, LLC'S MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

---

Plaintiff/Counterclaim Defendant Zayo Group, LLC ("Zayo") submits this Motion to Dismiss Amended Counterclaims Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion" or "Motion to Dismiss").[1]

[1] **Pursuant to CNS Civ. Practice Standard 7.1B(b)**, undersigned counsel certifies that they conferred with counsel for the Trustee regarding the instant Motion. Because the

## INTRODUCTION

This matter arises from iBridge Cloud Solution, Inc.'s ("iBridge") repeated failures to pay its outstanding balances (upwards of $11 million) owed to Zayo under a services agreement and restructured payment plan entered between the Parties. To shirk liability, iBridge's Chapter 7 Trustee Harvey Sender (the "Trustee") asserts a host of counterclaims claiming that *Zayo* is somehow liable to iBridge. The plain language of the Parties' agreements, however, easily defeats the Trustee's claims.

## BACKGROUND[2]

Zayo is a communications infrastructure company that provides fiber optic cables, network services, and data transmission services. (ECF No. 54 at p. 21, ¶ 76). In 2019, Zayo and iBridge executed the Master Customer Agreement ("MCA") to facilitate and govern iBridge's purchase of Zayo's services. (*Id.* at p. 21, ¶ 78). According to iBridge, it selected Zayo in reliance on various misrepresentations and omissions as to Zayo's ability to deliver the services iBridge desired, including a "diverse and redundant" network. *See, e.g.*, (*Id.* at pp. 32-33, ¶¶ 9-12). The agreements giving rise to this action, however,

language of the applicable agreements bars the Trustee's claims as a matter of law, the Parties disagree as to whether further amendment of the counterclaims would cure these legal issues. Trustee opposes the Motion.

[2] For purposes of this Motion only, Zayo draws the following facts from the Trustee's Amended Counterclaims, except for those that contradict the terms of the agreements attached to and referenced in the Parties' pleadings. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) (explaining that under Rule 12(b)(6), a plaintiff's allegations "do not overcome contradictory statements in the text of a contract attached to their complaint."). To that end, the Court may consider the Parties' agreements at issue and related documents for purposes of this Motion. *See Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

tell a different story.

The MCA "provides general terms and conditions under which Customer [i.e., iBridge] may…purchase access to and utilization of selected portions of the Zayo fiber network and associated infrastructure ('Access') and certain related telecommunications and infrastructure services ('Services') from Zayo." (ECF No. 22-2, MCA, Art. 1.1). When placing an order for Access and/or Services, the "Customer is responsible for the accuracy of all information that it provides to Zayo" and "shall set forth the term, pricing, Access and Service type and location(s)…and any additional terms applicable to the Access and/or Services," which are then incorporated into and subject to the MCA. (*Id.* Arts. 1.1-1.2). The MCA, including all Customer Orders, "constitutes the entire and final agreement and understanding between the Parties, express or implied, with respect to the Access and Services and supersedes all other prior or contemporaneous representations, understandings or agreements." (*Id.* Art. 5.9).

Beginning in 2019, iBridge submitted several Customer Orders for Zayo Services. *See* (ECF No. 54 at p. 35 ¶¶ 19, 21, 24, pp. 38-39 ¶¶ 37-40). Despite its obligation to provide all accurate information regarding each Service requested, none of those Customer Orders requested or provided for "diverse and redundant" *networks* and some even expressly disclaimed any such requirement. *See, e.g.*, (ECF No. 22-3, Customer Orders); (Pl.'s Ex. 1 at 1). Nevertheless, iBridge now claims that the lack of a "diverse and redundant network" was the cause of outages on iBridge's network and it stopped paying its invoices. *See* (ECF No. 54 at p. 40 ¶ 50, p. 42 ¶ 65, p.47 ¶¶ 92-93). iBridge owed Zayo $4 million by early 2021.

On or about March 1, 2021, Zayo and iBridge executed the I-Bridge Payment Restructure Agreement (the "Restructure Agreement") to cure iBridge's defaults. *See* (*id.* at p. 23, ¶¶ 85-86). The Restructure Agreement provided that Zayo would credit iBridge a significant portion of its outstanding $4 million balance in exchange for iBridge making certain payments moving forward. *See* (ECF No. 22-4, Restructure Agreement, at 3-6). The Restructure Agreement states: "This Agreement, the MCA, the applicable Customer Schedule(s), [and certain Customer Orders] constitute the entire agreement between the parties and where in conflict, this Agreement shall take precedence of any and all prior agreements, arrangements or understandings, written or oral, between any of the parties relating to the subject matter of this Agreement." (*Id.* at 6-7). The Restructure Agreement contains no provision for or mention of any "diverse and redundant" services or that Zayo would deliver and install fiber laterals within sixty (60) days. (*Id.* at 2-7).

iBridge failed to perform its payment obligations under the Restructure Agreement. (ECF No. 54 at p. 47, ¶ 89). In a correspondence to Zayo, iBridge disputed its outstanding invoices given its perceived issues with taxes and surcharges billed, which the MCA authorized (ECF No. 22-2, MCA, Art. 2.4), and whether the provided equipment was new or used. *See* (ECF. No. 54-1 at 1-2). Nowhere did iBridge mention the lack of "diverse and redundant networks" or any issues with outages. *Compare* (ECF No. 54-1) *with* (ECF No. 54 at p. 47, ¶¶ 90-93). Without following the MCA's termination provision, iBridge sought the services of a new provider and refused to pay Zayo the over $11 million due and owing. *See* (ECF No. 54 at p. 48, ¶¶ 97-99).

Zayo filed the instant lawsuit to collect what iBridge owes. Two weeks later, iBridge

filed a voluntary petition for Chapter 7 Bankruptcy and the Trustee removed this action to this federal district court. The Trustee asserts seven counterclaims against Zayo: (1) breach of the MCA (Claim 1); (2) breach of the Restructure Agreement (Claim 2); (3) breach of the covenant of good faith and fair dealing (Claim 3); (4) fraudulent misrepresentation (Claim 4); (5) fraudulent nondisclosure (Claim 5); (6) declaratory judgment (Claim 6); and (7) equitable subordination under 11 U.S.C. § 510(c) (Claim 7).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1158 (10th Cir. 2021) (quotations omitted). To be plausible, there must be more than a "mere possibility that a defendant has acted unlawfully" but rather a factual basis from which the Court can infer liability. *Id.* at 1158-59. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).

## ARGUMENT

The Court should dismiss the amended counterclaims because the clear and unambiguous language of the Parties' agreements defeats each claim as a matter of law. Further, despite its length, the amended counterclaims fail to plead sufficient facts to state any plausible claims. Thus, the Court should grant the instant Motion.

### I. The Trustee's Contract and Quasi-Contract Claims Fail as a Matter of Law.

To start, Claims 1-3 and 6 fail as a matter of law because they violate the plain

language of the Parties' agreements and seek to inject substantive terms for which the Parties did not bargain.

### A. Claims 1, 2, and 6 - The Trustee's Breach of Contract Claims Fail.

Under Colorado law, which governs the Parties' agreements,[3] a breach of contract claim has four elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). In determining the parties' intent, courts interpret the parties' agreement according to the "plain and generally accepted meaning of the contractual language," seeking "to harmonize and give effect to all provisions so that none will be rendered meaningless." *Ute Water Conservancy Dist. v. Fontanari*, 2022 COA 125M, ¶ 37. In doing so, courts may neither rewrite the parties' agreement nor add provisions not contemplated by the parties. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 833 (10th Cir. 2016) (applying Colorado law). The agreements here defeat the Trustee's breach of contract claims.

#### 1. Claim 1 - Zayo Did Not Breach the MCA.

Claim 1 fails because the MCA imposed no obligation on Zayo to provide a "diverse and redundant" *network* as the Trustee alleges. As mentioned, the MCA requires the *customer* (i.e., iBridge) to provide Zayo all accurate information in the Customer Order regarding the service requested "and any additional terms applicable to" those Services.

---

[3] Both the MCA and Restructure Agreement contain a Colorado choice of law provision. *See* (ECF No. 22-2, MCA, Art. 5.4; ECF No. 22-4, Restructure Agreement, at 6).

(ECF No. 22-2, MCA, Art. 1.1). The specific Customer Order, which is then incorporated into the MCA, dictates Zayo's performance obligations, (*id.* Arts. 1.1-1.2), constitutes the "entire and final agreement" between the Parties, and "supersedes all other prior or contemporaneous representations, understandings or agreements," (*id.* Art. 5.9).

Contrary to the Trustee's assertion, neither the MCA nor iBridge's numerous Customer Orders requested "diverse and redundant" *networks*. *See, e.g.*, (ECF No. 22-3, Customer Order; Pl.'s Ex. 1). The Trustee's attempt to misrepresent iBridge's orders by cherry picking references to laterals as "diverse" does not suggest otherwise. *See* (ECF No. 54 at pp. 50-54, ¶¶ 107-17). As Customer Order Nos. 1735915 and 1842647 make clear, iBridge requested connection of two fiber lines (i.e., the physical wire used for connectivity, referred to as "laterals") to multiple locations. (ECF No. 54 at pp. 50-53 ¶¶ 107-16). This necessarily required the fiber line to enter and then exit those locations at different (or *diverse*) points to connect to another location. The referenced diagrams confirm this. *See* (*id.* at p. 51; ECF No. 54-2 at 5). That iBridge ordered the fiber line to form a "ring" between these locations does not transform the requested service into a "diverse and redundant" *network*—a detailed and uniquely configured service separate from the fiber line itself—that iBridge simply did not order. *See* (*id.*).

Even iBridge's alleged deficiency memorandum to Zayo does not mention the lack of "diverse and redundant" networks as a basis for iBridge's perceived breaches of the MCA (and for good reason). *See* (ECF No. 54-1). Rather, the Trustee's position is based on Zayo's alleged statements made prior to executing the at-issue Customer Orders. But it is well established that the Court cannot consider extraneous evidence such as this

when, like here, the contract is clear and unambiguous. *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). Whatever disagreement iBridge (and by extension the Trustee) has with the interpretation of the plain language of the Customer Orders does not compel a different result. *Id.* at 377 ("The mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract."). Thus, Zayo had no obligation to provide services not requested in the Customer Orders and Claim 1 fails. *See Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1164 (Colo. App. 1990) (finding no breach of contract based on performance obligations not included in contract).

**2. Claim 2 - Zayo Did Not Breach the Restructure Agreement.**

Similarly, the Court should dismiss Claim 2 because the plain language of the Restructure Agreement defeats the Trustee's position. Claim 2 alleges that Zayo breached the Restructure Agreement by failing to (1) install and deliver certain services within 60 days, and (2) failed to monitor iBridge's networks. *See* (ECF No. 54 at p. 55, ¶ 127). But the Restructure Agreement does not contain any such provisions or requirements for Zayo. And to the extent the Trustee is alleging that Zayo breached section 2.7 of the Restructure Agreement, that section puts the onus on the *customer* to notify Zayo of a failure, at which point Zayo has a duty to address the issue—not the other way around. *See* (ECF No. 22-4, Restructure Agreement, at 5). Like the MCA, the Restructure Agreement "constitute[s] the entire agreement between the parties" and takes precedence over any written or oral conflicting prior agreements, arrangements, or understandings. *See* (*id.* at 6-7). Thus, Claim 2 fails because the Trustee cannot

supplement the terms of the Restructure Agreement with statements allegedly made prior to the agreement's execution. *Ad Two, Inc.*, 9 P.3d at 376.

**3. Claim 6 - The Trustee is not Entitled to Declaratory Judgment.**

Because the Trustee's breach of contract claims (Claims 1 and 2) fail as a matter of law, its claim for declaratory judgment (Claim 6) regarding iBridge's rights under the MCA and Restructure agreement necessarily fails. *See W. Union Co. v. Ace Am. Ins. Co.*, 623 F. Supp. 3d 1153, 1160 (D. Colo. 2022) (dismissing plaintiff's declaratory judgment claim where breach of contract claim failed). Even if the Trustee's breach of contract claims did not fail as a matter of law (they do), the Parties' obligations under the MCA and Restructure Agreement "will necessarily be resolved in the context of [the Trustee's] breach of contract" claims. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1197 (D. Colo. 2018) (dismissing duplicative declaratory judgment claim). Thus, the Court should dismiss Claim 6.

**B. Claim 3 - The Trustee's Good Faith and Fair Dealing Claim Fails.**

While every contract in Colorado "contains an implied duty of good faith and fair dealing," this duty cannot contradict the terms of the parties' agreement or inject substantive terms for which the parties did not bargain. *Max Fire Apparatus, Inc. v. Rosenbauer Am., LLC*, 759 F. Supp. 3d 1168, 1183 (D. Colo. 2024) (quotations omitted). Moreover, the doctrine is limited to situations where the agreement provides either party with the discretion to set or control its performance obligations *after* formation. *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 67. Claim 3 fails as a matter of law under both scenarios.

Claim 3 alleges Zayo breached its duty of good faith and fair dealing by failing to "design, install, monitor, and manage a diverse and redundant network to prevent and minimize network outages." (ECF No. 54 at p. 56, ¶ 134). As demonstrated above, this is demonstrably false. The Trustee also claims Zayo "billed iBridge for services before infrastructure was installed or the service activated." (*Id.*). But the Trustee does not identify any specific instances of this, and its position is belied by the Customer Orders, iBridge's deficiency memorandum, and the Restructure Agreement, which all provide for monthly charges to iBridge for the services ordered. *See* (ECF No. 22-3, Customer Orders; ECF No. 22-4, Restructure Agreement; ECF No. 54-1). It is clear the Trustee seeks to use this duty "to contradict terms or conditions for which [iBridge] has bargained" *and* to "inject substantive terms into the parties' contract"—something it plainly cannot do. *Miller v. Bank of New York Mellon*, 379 P.3d 342, 348-49 (Colo. App. 2016) (dismissing good faith and fair dealing claim under similar circumstances). Thus, the Court should dismiss Claim 3 for this reason alone.

In addition, the Trustee has not identified any contractual provision providing Zayo discretion. Nor could it, because Zayo is bound by the terms and conditions of the Customer Order as provided by the *customer*. Zayo had no discretion whatsoever "in how to monitor and manage a diverse and redundant network" that was not ordered. *See Spring Creek*, 887 F.3d at 1019-20. Thus, Claim 3 fails on this basis as well.

## II. Claims 4 and 5 - The Trustee's Fraud Claims Fail.

To plead a fraudulent misrepresentation claim under Colorado law, the Trustee must allege: (1) "a knowing misrepresentation of material fact," (2) "reliance on the

material misrepresentation," (3) "the right or justification in relying on the misrepresentation," and (4) "reliance resulting in damages." *1881 Extraction Co. LLC v. Kiinja Corp.*, 660 F. Supp. 3d 1059, 1071 (D. Colo. 2023) (quotations omitted). A fraudulent nondisclosure[4] claim requires a showing that (1) Zayo failed to disclose a fact it had a duty to disclose, (2) with intent to induce iBridge to act, and (3) iBridge justifiably relied on the omission. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1109 (10th Cir. 2009) (dismissing fraudulent nondisclosure claim under Colorado law). For the following reasons, the Court should dismiss the Trustee's fraud claims.

No Fraud for Failure to Perform. To start, the Trustee's fraud claims fail because "[f]raud cannot be predicated upon the mere non-performance of a promise or contractual obligation, or upon failure to fulfill an agreement to do something at a future time." *Brightspot Sols., LLC v. A+ Prods., Inc.*, No. 20-CV-03335-MEH, 2021 WL 1251512, at *7 (D. Colo. Apr. 5, 2021) (dismissing fraudulent misrepresentation claim based on non-performance). Such is the case here. Indeed, critical to the Trustee's claims is the contention that Zayo knew of but misrepresented and failed to disclose its inability to provide a "diverse and redundant" network and therefore could not perform under the MCA, Customer Orders, and the Restructure Agreement. *See, e.g.*, (ECF No. 54 at p. 59, ¶¶ 140-43; p. 60, ¶ 151; p. 61, ¶¶ 154-56). This does not constitute fraud. *See Nelson v. Gas Res. Inst.*, 121 P.3d 340, 343 (Colo. App. 2005) (no fraud for failure to perform). Thus, the Court should dismiss Claims 4 and 5 for this reason alone.

[4] It is unclear whether Claim 5 asserts a fraudulent nondisclosure claim or a fraudulent concealment claim. Under either theory, Claim 5 fails for the reasons herein.

No Duty to Disclose. "A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that 'in equity or good conscience' should be disclosed," as contemplated under Section 551(2) of the Restatement (Second) of Torts. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998). The amended counterclaims contain a single, conclusory assertion that Zayo owed a duty to disclose "because (1) it stated some but not all material facts, knowingly creating a false impression; or (2) promised to perform an act knowing that undisclosed facts made his performance unlikely." (ECF No. 54 at p. 61, ¶ 152). Not only is this lone assertion insufficient, but it is belied by the fact that there was simply no requirement in the Parties' agreements for Zayo to provide "diverse and redundant" networks that iBridge did not order. iBridge's and the Trustee's mistaken beliefs to the contrary do not counsel otherwise. *See Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 565 (Colo. App. 2004) (finding no fraudulent nondisclosure where parties' agreement was clear, but plaintiff made a unilateral mistake regarding the agreement's terms).

No Justifiable Reliance. Next, the Trustee attempts to assert that iBridge *reasonably relied* on Zayo's alleged fraudulent conduct, which induced iBridge to enter the MCA, Customer Orders, and Restructure Agreement. This too fails. A party's reliance is not justified when it is on notice of or has access to information regarding the true facts of the transaction. *See Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018) (finding no justified reliance where plaintiff had sufficient notice of facts underlying transaction). The same is true here.

As demonstrated above, there is no provision in the MCA or the relevant Customer

Orders obligating Zayo to provide "diverse and redundant" networks. Rather, the MCA unequivocally states that it was *iBridge's* responsibility to provide all accurate information and any additional terms for inclusion in the relevant Customer Orders. *See* (ECF No. 22-2, MCA, Art. 1.2). Those terms, along with the MCA, are the complete and final agreement between Zayo and iBridge and supersede any oral or written prior or contemporaneous "representations, understandings or agreements." (*Id.* Art. 5.9). The MCA also explicitly disclaims all representations or warranties, whether express or implied, regarding Zayo's Services, including the challenges raised here. (*Id.* Art. 4.3). This clear and unequivocal language refutes any suggestion that iBridge's reliance on Zayo's prior representations or nondisclosures was justified, especially considering that it was *iBridge's* failure to specifically request the type of services it desired. *See Cahey v. Int'l Bus. Machines Corp.*, No. 20-CV-00781-NYW, 2020 WL 5203787, at *10-11 (D. Colo. Sept. 1, 2020) (finding no justifiable reliance where defendant disclaimed reliance on any prior inconsistent statements).

The same is true regarding the Restructure Agreement. Section 3.10 provides:

> Each of the signatories to this Agreement hereby warrants that, in executing this Agreement, it does not rely upon *any inducements, promises, or representations whatsoever* made by any of the other parties herein, except to the extent stated in this Agreement and only to the extent stated on this Agreement.

(ECF No. 22-4, Restructure Agreement, at 6-7 (emphasis added)). Again, the Restructure Agreement constitutes the entire and final agreement between the Parties and takes precedence over all written or oral prior agreements, arrangements, or understandings that conflict with the Restructure Agreement. (*Id.*). This clear and specific language

defeats iBridge's reliance on any alleged misrepresentation or nondisclosure made to induce iBridge to sign the Restructure Agreement. *See Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 19 (Colo. App. 2010) (finding no justified reliance due to unequivocal exculpatory clause). Thus, Claims 4 and 5 fail for this reason as well.

No Causation. Finally, Claims 4 and 5 fail because the Trustee fails to plead causation with particularity as required under F.R.C.P. 9(b). Causation is an essential element of the Trustee's fraud claims and is subject to the heightened pleading standard under F.R.C.P. 9(b). *See 1881 Extraction Co., LLC*, 660 F. Supp. 3d at 1075 (dismissing fraudulent misrepresentation claim for lack of particularity regarding causation). The Trustee's claims make only fleeting references to various outages that caused harm to iBridge and its customers. *See* (ECF No. 54 at p. 40, ¶ 50; p.47, ¶¶ 92-93). But these vague assertions fall well short of pleading "the who, what, when, where, and how" required under F.R.C.P. 9(b). *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114-17 (D. Colo. 2010) (dismissing fraudulent concealment and misrepresentation claims under Rule 9(b)). Thus, the Court should dismiss Claims 4 and 5.

## III. Claim 7 - The Trustee's Equitable Subordination Claim Fails.

Equitable subordination is "an extraordinary remedy" and one courts should use "sparingly." *In re Alternate Fuels Inc.*, 789 F.3d 1139, 1154 (10th Cir. 2015). The party seeking equitable subordination must establish: (1) the claimant has engaged in inequitable conduct, (2) the claimant has injured other creditors or given unfair advantage to itself, and (3) subordination is not inconsistent with the Bankruptcy Code. *In re Castletons, Inc.*, 990 F.2d 551, 559 (10th Cir. 1993). The Trustee has not and cannot

make this showing.

First, as demonstrated above, the Trustee fails to plead Zayo engaged in fraudulent and/or inequitable conduct. Second, the Trustee provides no facts whatsoever identifying any "other creditors" or how they have been injured by Zayo's alleged inequitable conduct. *See VDARE Found.*, 11 F.4th at 1157-58. These are reasons enough to dismiss Claim 7.

Third, and finally, equitable subordination would be inconsistent with the Bankruptcy Code. The Trustee's position ignores the fact that "Chapter 7 discharge is not available to corporations" under 11 U.S.C. § 727(a)(1). Even after the Chapter 7 proceedings, iBridge will remain indebted to Zayo (who owns 99.8% of its debt).[5] *Cf. Icon Health & Fitness, Inc. v. Fisher-Price, Inc.*, No. 1:08-CV-10 TS, 2011 WL 703866, at *3 (D. Utah Feb. 21, 2011) (noting that Chapter 7 does not discharge corporate debts or extinguish corporate entity). At bottom, iBridge's Chapter 7 proceedings appear to be nothing more than a "litigation tactic" designed to benefit only iBridge, which is inconsistent with the Bankruptcy Code. *Cf. In re Asset Resol. Corp.*, 552 B.R. 856, 863 (Bankr. D. Kan. 2016) (dismissing Chapter 7 proceedings under similar circumstances). Thus, the Court should dismiss Claim 7.

**CONCLUSION**

For the reasons stated herein, Zayo respectfully requests that the Court grant the instant Motion to Dismiss and dismiss all of the Trustee's amended counterclaims.

---

[5] The Court may take judicial notice of iBridge's public filings in its bankruptcy action under F.R.C.P. 12(b)(6). *Hodgson v. Farmington City*, 675 F. App'x 838, 840-41 (10th Cir. 2017).

DATED: July 21, 2025

*s/ Andrew P. Garnett*
Andrew P. Garnett, Reg. No. 45220
Nicholas Eaton, Reg. No. 49956
Garnett Powell Maximon Barlow & Farbes
1125 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 991-3344
andrew.garnett@garnettlegalgroup.com
nick.eaton@garnettlegalgroup.com

*Attorneys for Plaintiff/Counterclaim Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 21, 2025, a true and correct copy of the foregoing **ZAYO GROUP, LLC'S MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** was electronically filed using the Court's CM/ECF system, which will provide service to the following counsel of record.

Patrick D. Vellone
Jennifer E. Schlatter
Vandana S. Koelsch
Allen Vellone Wolf Helfrich & Factor P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
pvellone@allen-vellone.com
jschlatter@allen-vellone.com
vkoelsch@allen-vellone.com

*Attorneys for Defendants*

*s/ Tracy Williams*
Tracy Williams