**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Civil Action No. 25-cv-00662-CNS-TPO**

**ZAYO GROUP, LLC**,

Plaintiff/Counterclaim Defendant,

v.

**HARVEY SENDER**, in his capacity as
Chapter 7 Trustee for the bankruptcy estate of
iBridge Cloud Solutions, Inc.

Defendant/Counterclaim Plaintiff,

IBRIDGE CLOUD TECHNOLOGIES, INC.,
IBRIDGE TECHNOLOGY SOLUTIONS, INC.,
GOLD TAILINGS INVESTMENTS, LLC,
DATA CENTER FACILITIES MANAGEMENT, INC., and
PAUL SMITHAM,

Defendants.

---

**TRUSTEE'S RESPONSE TO ZAYO GROUP, LLC'S MOTION TO DISMISS AMENDED COUNTERCLAIMS**

---

Counterclaim Plaintiff Harvey Sender, in his capacity as Chapter 7 Trustee for the bankruptcy estate of iBridge Cloud Solutions, Inc. (the "Trustee"), hereby submits this Response to Counterclaim Defendant Zayo Group, LLC's ("Zayo") Motion to Dismiss Amended Counterclaims. ECF No. 64.

Zayo's Motion rests on a narrow and unsupportable reading of the parties' agreements. It argues that because the words "diverse and redundant" do not appear in the four corners of a few selected documents, the Trustee's counterclaims must fail. But the agreements are not stand-alone instruments. They incorporate by reference a set of subparts, supplements, addenda, schedules, and attachments that together define Zayo's obligations. Read as a whole, these materials either (a) squarely impose a duty on Zayo to build and configure a diverse and redundant network, or (b) at the very least, (taking the factual allegations as true), create an ambiguity that cannot be resolved on a motion to dismiss. In either case, Zayo's effort to limit its obligations by isolating certain documents cannot stand, and its Motion should be denied.

## I. Legal Standard

In deciding a motion under Rule 12(b)(6), a court accepts as true all well-pleaded factual allegations and views them in the light most favorable to the nonmovant. *Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma,* 107 F.4th 1121, 1130 (10th Cir. 2024). A complaint survives dismissal if it states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts alleged permit the reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions or formulaic recitations of elements do not suffice. *Tufaro*, 107 F.4th at 1130. Accepting as true the Counterclaims'

allegations, the Trustee has pleaded sufficient facts for claims of breach of contract and of the implied duty of good faith and fair dealing, fraud, and equitable subordination.[1]

## II. Factual Background

iBridge's business depended on a reliable communications network. Its customers needed uninterrupted service to run their operations. In 2019, iBridge sought to purchase such a network. Lacking the infrastructure to build one itself, iBridge turned to a provider with the resources and skill to design and implement a system that could support its business and growth. (Counterclaims ("CC") ¶¶6–7). Zayo promised to design, install, monitor, and manage a diverse and redundant network. The purpose was to ensure that if one line failed, service would continue. (CC ¶¶6, 10, 12, 26, 47). That assurance of continuity is what separates a redundant, diverse network from a single path. When fiber damage later caused service to fail, it demonstrated that Zayo had not delivered as promised. (CC ¶¶84, 92-94).

In 2019, iBridge entered into a Master Customer Agreement ("MCA") with Zayo. The MCA is not a stand-alone document. It incorporates by reference supplemental terms, customer orders, and other attachments. (CC ¶¶102–106). For example, on March 31, 2019, iBridge signed Zayo service orders for a fiber ring (the "Sacramento Fiber Ring") and a long-haul dark fiber network route from Sacramento to San Jose ("Long-Haul West Dark Fiber Route"), configured with point-to-point links, four In-Line Amplification ("ILA") sites for signal regeneration, and 100G wave back up circuit ("Lit Backup 100G Circuit," and collectively with the point-to-point links, four ILA sites, the "Long-Haul West Dark Fiber Circuit"). (CC ¶19). iBridge also executed service orders for

[1] The Trustee agrees to dismissal of the claim for declaratory judgment, the Sixth Claim.

Infinera telecommunications hardware, software, and maintenance support ("Infinera Equipment") necessary to operate the Long-Haul West Dark Fiber Circuit. (CC ¶21).

Zayo's Complaint cites twelve service orders, but there are scores more. (CC ¶¶102–106, 118). A later Restructure Agreement broadened the scope of Zayo's obligations, reaching back to earlier agreements and forward to new ones.[2] Zayo cannot defend itself by isolating a few documents. The agreements must be read together, and together they expressly impose, or at least render ambiguous, the duty to build, maintain, and monitor a diverse and redundant network. Ambiguity cannot be resolved on a motion to dismiss.

## III. Argument

### A. The Counterclaims allege breach of the MCA.

#### 1. Contract interpretation

The Trustee alleges that Zayo breached the MCA. Before a jury can assess Zayo's alleged breach, the Court must first construe the contracts and define Zayo's obligations under them. "Under Colorado law, the primary goal of contract interpretation is to determine and give effect to the intent of the parties." *McAuliffe v. Vail Corp*., 69 F.4th 1130, 1144 (10th Cir. 2023) citing *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). To determine the parties' intent, the court should give effect to the plain and generally accepted meaning of the contractual language. *E. Ridge of Fort Collins, LLC v. Larimer and Weld Irrigation* Co., 109 P.3d 969, 974 (Colo. 2005); *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). A court must

[2] **Exhibit A**, Restructure Agreement §3.11. "This Agreement, the MCA, the applicable Customer Schedules(s), the LH Service Order, the Metro Service Order and the 50-Lateral Supplement constitute the entire agreement between the parties . . . "

interpret a contract "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984).

If the contract's terms are ambiguous "or are used in some special or technical sense not apparent from the contractual document itself," "the court may look beyond the four corners of the agreement in order to determine the meaning intended by the parties." *KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769, 776–77 (Colo. 1985). Whether an ambiguity exists is a question of law. *Pepcol*, 687 P.2d at 1314.

Importantly, a *preliminary evaluation* of ambiguity or technical usage *may* consider extrinsic evidence "bearing upon the meaning of the written terms, such as evidence of local usage and of the circumstances surrounding the making of the contract." *KN Energy, Inc.*, 698 P.2d at 776–77 citing *Pepcol*, 687 P.2d at 1314 n. 3; 4 S. Williston, A Treatise on the Law of Contracts §§ 601, 609 and 629 (W. Jaeger ed. 1961). Additionally, where terms are undefined in a contract, a court may consider definitions in a recognized dictionary. *Renfandt v. New York Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018) citing *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991); *see also DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 712, 97 Cal. Rptr. 3d 856, 868–69 (2009) (court makes preliminary determination of all credible evidence to assess parties' intention and if it decides, after considering this evidence, that contract is ambiguous, it considers extrinsic evidence to determine intent as a fact issue).

"When a document is unambiguous, it cannot be varied by extrinsic evidence." *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996). On the other hand, "once

it has been determined that a contract is ambiguous" or uses undefined technical terms "and that its construction depends upon extrinsic facts and circumstances, then the terms of a contract become questions of fact and are thereafter for the triers of fact to decide." *McAuliffe*, 69 F.4th at 1146 (citing *Jaeco Pump Co. v. Inject-O-Meter Mfg. Co*., 467 F.2d 317, 320 (10th Cir. 1972)).

Ambiguous contract language cannot be resolved in a motion to dismiss. *McAuliffe*, 69 F.4th at 1143 (citing *Sonoiki v. Harvard Univ*., 37 F.4th 691, 711 (1st Cir. 2022); *Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) ("[I]f a contract is ambiguous as applied to [the facts that furnish the basis of the suit], a court has insufficient data to dismiss a complaint for failure to state a claim."); *ASARCO, LLC v. Union Pac. R.R. Co*., 765 F.3d 999, 1008–09 (9th Cir. 2014) ("If the settlement agreement is ambiguous, then interpretation of the agreement presents a fact issue that cannot be resolved on a motion to dismiss.")).

### 2. Incorporation by reference can make a contract ambiguous

It is well-settled that contracting parties may incorporate contract terms by reference to another document. *French v. Centura Health Corp*., 509 P.3d 443, 449–50 (2022) (citations omitted). "In Colorado, for an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Id.* However, general or oblique references to future documents to be incorporated cannot support an incorporation by reference. *Id.* (citing *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 818–19 (Del. 2018) (stipulated court orders between a town and a property owner did not incorporate by reference a *proposed* amendment, even though the orders referred to it, because the orders did not refer to or incorporate the substance of the amendment and a mere reference to the

amendment, without more, was insufficient to incorporate its substance); *see also State ex rel. U-Haul Co. of W. Virginia v. Zakaib*, 752 S.E.2d 586, 595 (W. Va. 2013) ("An oblique reference to a separate, non-contemporaneous document is insufficient to incorporate the document into the parties' final contract.").

The use of incorporation by reference can create ambiguity in a contract. *Zakaib*, 752 S.E.2d at 597 (citing Royce de R. Barondes, *Side Letters, Incorporation by Reference and Construction of Contractual Relationships Memorialized in Multiple Writings,* 64 Baylor L.Rev. 651, 661 (2012)) ("cavalier drafting style, simply incorporating another document by reference, allows parties to elide the process of detailing precisely what they intended, creating ambiguity."). Ambiguous contracts that require the use of extrinsic evidence cannot be decided on a motion to dismiss.

### 3. The MCA required a diverse and redundant network

#### a) Express terms demonstrate diverse/redundant network.

The MCA between iBridge and Zayo is not a single, integrated contract. Instead, it is numerous service orders, supplements, addenda, and other subparts, each addressing a different subset of Zayo's obligations. Standing alone, no one service order or document reveals the full scope of what Zayo undertook.

On the basis of limited service orders, Zayo asks the Court to find that the plain language of the MCA unambiguously precludes the Trustee's claims. Zayo's service orders, however, demonstrate that Zayo agreed to build and configure a diverse and redundant network. For example, Renewal Order 1842647 identifies order components to form a ring, i.e., a diverse and redundant network.[3] This is because the location of the

[3] The Trustee uses the Sacramento Ring as a representative example for purposes of this response.

end point is the start of the next beginning point. (CC ¶107). The yellows connect, the blues connect, and the pinks and greens connect, forming a ring. (CC ¶110).

| Record Type ID | Address | Address | Lateral A | Lateral Z |
|---|---|---|---|---|
| **Dark Fiber** | **1100 N Market Blvd/Fi-1/Ste-QTS, Sacramento, CA** | **650 J St./Fi-1/Ste-175/ Rm – Equipment, Sacramento, CA** | **Two *(Diverse)*** | **Two *(Diverse)*** |
| **Dark Fiber** | **650 J St./Fi-1/Ste-175/ Rm – Equipment, Sacramento, CA** | **10815 Gold Center Dr/Fi-1/Rm-MPOE, Rancho Cordova, CA** | **Two *(Diverse)*** | **Two *(Diverse)*** |
| **Dark Fiber** | **10815 Gold Center Dr/Fi-1/Rm-MPOE, Rancho Cordova, CA** | **3101 Gold Camp Dr-Fi-1/Rm-Telco, Rancho Cordova, CA** | **Two *(Diverse)*** | **Two *(Diverse)*** |
| **Dark Fiber** | **3101 Gold Camp Dr-Fi-1/Rm-Telco, Rancho Cordova, CA** | **1100 N Market Blvd/Fi-1/Ste-QTS, Sacramento, CA** | **Two *(Diverse)*** | **Two *(Diverse)*** |

A visual representation *prepared by Zayo* demonstrates the redundant and diverse nature of the Sacramento Ring (CC ¶108):




Service Order 1362999 (**Exhibit B**) also identifies the redundant equipment:

Hardware Detail

| Product Code | 1101 N Market St | 650 J St. | 10816 Golden Center | 3101 Gold Camp | | 274 Brannan | 3075 Raymond St. | 11 Great Oaks | Spares | |
|---|---|---|---|---|---|---|---|---|---|---|
| TM3000/II-DC-CU3 | 2 | 2 | 2 | 2 | | | | | 1 | |
| TRX100015/01 | 2 | 2 | 2 | 2 | | | | | 1 | |
| TPMRHEX-L/16G | 2 | 2 | 2 | 2 | | | | | 1 | |
| TRX100140 | 2 | 2 | 2 | 2 | | | | | 1 | |
| TRX100145/919 | 2 | 2 | 2 | 2 | | | | | 1 | |
| AD1C-2F/1510 | 2 | 2 | 2 | 2 | | | | | 1 | |
| OA2-20/20/CCWG | 2 | 2 | 2 | 2 | | | | | 1 | |

In sum, the MCA and service orders expressly identify a diverse and redundant ring network.

### b) Zayo disputes the meaning of "diverse and redundant."

Renewal Order 1842647 uses the word "diverse" for the Laterals A and Z (CC ¶116, *supra* table). Zayo contends that the term "diverse" in the Order only refers to a "lateral" (i.e., a single line) and not a "network." It also fails to acknowledge that its service orders detail redundant equipment. Rather, it rationalizes that even if the connections in the Sacramento Ring form a ring, "the mere fact that iBridge ordered the fiber line to form a 'ring' between these locations does not transform the requested service into a 'diverse and redundant' *network*." (Mot. at 7, emphasis in original).

When laterals join, they form a "ring" or a "network." The plain and ordinary meaning of "network" is "an interconnected or interrelated chain, group, or system." *See* Merriam Webster https://www.merriam-webster.com/dictionary/network (last visited 8/22/2025); *Renfandt*, 419 P.3d at 580 (when construing contract for plain meaning, court may consider definitions in recognized dictionary).

Thereafter, Zayo defines a "diverse and redundant network," as "a detailed and uniquely configured service separate from the fiber line itself." (*Id.*). It does not provide citation for its definition. Zayo's own website, however, states that diverse lines provide outage protection (**Exhibit C**): "Two Standard Wavelengths following different physical paths ensur[e] route protection in case of an outage."[4]

[4] *KN Energy, Inc*., 698 P.2d at 776–77 (court can preliminarily consider extrinsic evidence to assess ambiguity or technical term not defined in contract).

**Diverse Wavelengths:** Two Standard Wavelengths following different physical paths, ensuring route protection in case of an outage.




The parties dispute the services provided in a "ring" and whether the MCA provides for diverse laterals and redundant equipment. The Trustee presents plain and unambiguous language that the MCA obligated Zayo to design, install, monitor, and manage a diverse and redundant network. The Court should adopt it, and deny Zayo's request to dismiss this claim based on contract interpretation. *KN Energy, Inc.*, 698 P.2d at 778 (district court properly decided contract was not ambiguous as a matter of law). Alternatively, the MCA is ambiguous and its scope cannot be decided on a motion to dismiss. *McAuliffe*, 69 F.4th at 1143, 1146.

**B. Zayo breached the Restructure Agreement.**

The Parties entered into a Restructure Agreement to resolve Zayo's breaches of the Long-Haul West Dark Fiber Circuit, the Sacramento Fiber Ring and the Lit Backup 100G Circuit agreements (CC ¶125). Under the Restructure Agreement, Zayo promised to provide certain services and products and make certain concessions in exchange for iBridge's payment and continued purchase of Zayo's services and products. (*Id.* ¶126). iBridge asserts that Zayo breached the Restructure Agreement because (1) it failed to deliver and install long-haul dark fiber routes and laterals within sixty (60) days and (2) provide proactive monitoring and management of the network. (*Id.* ¶127). Zayo contends that those terms are not in the Agreement.

Zayo ignores that the Restructure Agreement incorporates by reference numerous defined and undefined documents, including the MCA and its subparts. (Ex.

A, §3.11). iBridge signed Service Order No. 1478560 (**Exhibit D**) for network monitoring services for the Long-Haul West Dark Fiber Circuit and the Sacramento Fiber Ring:

| Product | Service Item Desc | Component | Component Address | Type | Status | Quantity | Amount | Items Total |
|---|---|---|---|---|---|---|---|---|
| Managed Services | Network Monitoring/NCC - MRC | SOC-0003349094 | 1100 N Market Blvd/Fl-1/Ste-QTS/Rm-MMR Sacramento CA | MRC | Pending Install | 1 | USD 850.00 | USD 850.00 |
| Managed Services | Network Monitoring/NCC - MRC | SOC-0003349095 | 650 J St/Fl-1/Ste-175/Rm-Equipment Sacramento CA | MRC | Pending Install | 1 | USD 850.00 | USD 850.00 |
| Managed Services | Network Monitoring/NCC - MRC | SOC-0003349096 | 10815 Gold Center Dr/Fl-1/Rm-MPOE Rancho Cordova CA | MRC | Pending Install | 1 | USD 850.00 | USD 850.00 |
| Managed Services | Network Monitoring/NCC - MRC | SOC-0003349097 | 3101 Gold Camp Dr/Fl-1/Rm-Telco Rancho Cordova CA | MRC | Pending Install | 1 | USD 850.00 | USD 850.00 |
| | Monthly Recurring Charges Total: | | | | | | | USD 3,400.00 |

The network monitoring services iBridge purchased required Zayo to monitor iBridge's network and inform iBridge if there was a problem with the Long-Haul West Dark Fiber Circuit and/or the Sacramento Fiber Ring. (CC ¶24). Specifically, Zayo's network monitoring was supposed to include: (1) 24x7x365 monitoring of Zayo core network facilities and electronics; (2) rigorous network maintenance to support customers and prevent outages; (3) proactive identification of private network service faults and customer circuit troubles; (4) prioritization of maintenance activities to reduce risk of service impact; (5) capable technicians with the experience and authority to repair circuits; (6) transparency and accessibility for escalations; and (7) customer-focused flexibility with support for specialized testing, protection switch tests, circuit reroutes during customer emergencies, and additional support in pursuit of Zayo's "extraordinary customer service." (CC ¶25).

Zayo disagrees. It contends that Section 2.7 of the Restructure Agreement requires the *customer*, not Zayo to monitor the customer network. That is a misreading of §2.7 which relates to *refunds* for Zayo's failures. If iBridge were required to monitor its own network, why would it pay Zayo for that service? Zayo disputes it was required to perform *any* monitoring, contrary to service orders such as Service Order 1478560. As

the parties dispute the scope of monitoring, the issue cannot be decided on a motion to dismiss. *McAuliffe*, 69 F.4th at 1143, 1146.

As to whether Zayo was required to deliver and install long-haul dark fiber routes and lateral within sixty (60) days, iBridge points to extrinsic evidence (Exhibit 1) attached to the Counterclaims which identify Zayo's failure. The Restructure Agreement is a fragmented document. Thus, whether a certain service was part of the Restructure Agreement is a factual dispute that cannot be decided on a motion to dismiss. *McAuliffe*, 69 F.4th at 1143, 1146.

**C. Zayo breached the Duty of Good Faith and Fair Dealing.**

"[E]very contract contains an implied duty of good faith and fair dealing." *Univ. of Denver v. Doe*, 547 P.3d 1129, 1140 (Colo. 2024) (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). "The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.*

iBridge selected Zayo to ***design, install, monitor, and manage its network***. iBridge made its selection based on Zayo's false representations that its services and products would enable iBridge to, among other things, (1) transport massive amounts of data seamlessly between markets; (2) sustain ***optimum and consistent*** performance; (3) protect against fiber cuts; and (4) economically outpace bandwidth expansion. Zayo falsely represented it could offer the requisite services, equipment, and capabilities to implement the diverse and redundant network iBridge required to keep its customers' managed IT services operating at ***peak performance***. (CC ¶9).

Zayo had discretion in how to design, install, monitor and manage to optimize and deliver peak performance. It abused its discretion. (CC ¶¶9, 134). Optimization and

consistent service was solely within Zayo's control. *McAuliffe*, 69 F.4th at 1152. "The concept of discretion in performance refers to one party's power after contract formation to set or control the terms of performance." *Id.* (citing *Amoco Oil Co*, 908 P.2d at 498); *Kelly v. DCC Tech. Holdings, Inc*., 724 F. Supp. 3d 122, 144 (W.D.N.Y. 2024) (breach of covenant where party frustrates contract by taking advantage of position to control implementation of agreement's terms); *Doe*, 547 P.3d at 1140.

Zayo responds that it had no discretion in monitoring because no redundant/diverse network existed nor does any service order identify monitoring. That's wrong. At least one service order, No. 1478560, specifically provides for monitoring. And others (see *supra*) demonstrate Zayo's obligation to provide a diverse and redundant network. "Whether a party acted in good faith is a question of fact to be determined on a case-by-case basis." *Doe*, 547 P.3d at 1140. Here, the scope and manner of performance are disputed and cannot be resolved on a motion to dismiss.

Zayo charged for services never performed or before it installed the requisite infrastructure/ or activated services, and continued to do so even after iBridge objected. (CC ¶134); *see also*, CC, Ex. 1 (payment for charges related to monitoring, never performed and line installed, payment before installed and activated). This conduct is contrary to the justified expectations of the parties. *Amoco Oil Co.*, 908 P.2d at 499 (Amoco aware of double-charges and dealers never agreed; conduct was against the justified expectations); *Simplot Ab Retail Sub, Inc. v. N. Liberty Land, LLC*, No. 18-CV-4047-KEM, 2020 WL 6293579, at *12 (N.D. Iowa Oct. 27, 2020)(provider failed to correct account; knowingly overbilling is "precisely the kind of conduct the implied covenant of good faith and fair dealing is designed to protect against").

### D. Zayo committed fraud.

Zayo contends that iBridge's breach claims fail because they are coterminous with the breach claims and a failure to perform is not fraud. Zayo misapprehends the basis of the fraud claim. Zayo made misrepresentations of material facts *pre-contract* that induced iBridge to enter into various contracts and sign service orders (CC ¶138). For example, Zayo misrepresented that its services would enable iBridge to "(1) transport massive amounts of data seamlessly between markets; (2) sustain optimum and consistent performance; (3) protect against fiber cuts; and (4) economically outpace bandwidth expansion." (CC ¶9). *Dream Finders Homes LLC v. Weyerhaeuser NR Co.,* 506 P.3d 108, 121 (Colo. App. 2021) (party has common law duty to not engage in pre-contractual fraud or make material misrepresentation).

Zayo also says that it had no duty to disclose. It did have that duty. Zayo concealed its inability to deliver on a deadline: "Zayo concealed that it did not have the skills and capabilities required to design, install, monitor, and manage iBridge's network and could not deliver the circuit by the deadlines promised." (CC ¶151).

Further, Zayo alleges that iBridge could not have justifiably relied on misrepresentation and non-disclosure because the contract is silent about a diverse and redundant network. It is no defense to say that a contract is silent on terms fraudulently withheld; the silence is the fraud. The omission before contracting produced the omission in the contract. "A principal under a positive duty to make a disclosure cannot escape liability for failure to do so by relying on a contract provision to the effect that there are no other representations except those contained in the written agreement." *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp*., 32 Cal. App. 4th 985, 993 (Cal. App. 1995) (quoting *Herzog v. Capital Co*., 27 Cal. 2d 349, 354 (1945)).

Zayo further alleges that the MCA and the Restructure Agreement expressly disclaim reliance. Zayo cannot enforce a contractual disclaimer obtained by fraud. *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997) ("[A] party that has been fraudulently induced to enter into a contract may rescind the contract to restore the status quo.") citing Restatement (Second) of Contracts § 164 (1981). Alternatively, the service orders are express warranties and cannot be negated by disclaimers. *Adeli v. Silverstar Auto., Inc.*, No. 5:17-CV-05224, 2018 WL 8402052, at *2 (W.D. Ark. Dec. 20, 2018) (as-is disclaimer cannot defeat express warranty); *Safadi v. Thompson*, 226 Ga. App. 685, 687, 487 S.E.2d 457, 458 (1997) (an "as is" contract does not negate an express warranty); *Griffiths v. Trs. of Carpenters Loc. Union No. 98 of United Bros. of Carpenters & Joiners of Am.*, 98 Wash. App. 1063 (2000) (same).

Finally, Zayo asserts that iBridge did not demonstrate causation. To the contrary, the result of Zayo's fraud and misconduct was a fatally flawed network that could not sustain iBridge's essential business functions. (CC ¶175). After over three years of paying for services and products that were never provided and making routine requests that Zayo remedy issues, iBridge was saddled with an unreliable network that lacked critical functionality and was plagued with repeated, lengthy network outages. (*Id.*).

**E. Zayo's claims must be subordinated.**

Zayo's inequitable conduct and repeated empty promises caused iBridge to fail (CC ¶175). Although Zayo repeatedly breached, it now seeks to recover more than $11,000,000 from iBridge (although iBridge has no assets). The Trustee assessed Zayo's claim and deems it to be asserted in bad faith and a continuation of Zayo's fraudulent conduct. Zayo is well aware of other creditors who have publicly filed proofs of claims in the Bankruptcy Court. In the absence of subordination, other creditors

would be harmed because the amount of Zayo's claim is so overstated that were Zayo to recover (for example, under its alter ego claims), other creditors may recover nothing, rewarding Zayo's bad faith conduct. As the Trustee has alleged sufficient facts in support of each element, the claim is not subject to dismissal under Rule 12(b)(6). *In re ACJK, Inc.*, No. 23-30045, 2024 WL 4047140, at *11 (Bankr. S.D. Ill. Sept. 4, 2024) (subjective equitable subordination claim difficult to resolve at pleading stage).

## IV. Conclusion

For the foregoing reasons, the Court should deny Zayo Group LLC's Motion to Dismiss Claims 1-5 and 7.

DATED this 22nd day of August 2025.

Respectfully submitted,

ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.

*s/ Vandana Koelsch*
Patrick D. Vellone
Jennifer E. Schlatter
Vandana Koelsch
Benjamin J. Woodruff
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Phone: (303) 534-4499
pvellone@allen-vellone.com
jschlatter@allen-vellone.com
vkoelsch@allen-vellone.com
bwoodruff@allen-vellone.com

*Attorneys for Harvey Sender as Trustee, on behalf of Debtor iBridge Cloud Solutions, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of August 2025, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system, which will provide service to the following:

Andrew P. Garnett
Nicholas Eaton
GARNETT POWELL MAXIMON BARLOW & FARBES
1125 17th Street, Suite 2200
Denver, CO 80202
andrew.garnett@garnettlegalgroup.com
nick.eaton@garnettlegalgroup.com

*Counsel for ZAYO GROUP, LLC*

Matthew A. Simonsen
Daniel D. Williams
GRATA LAW AND POLICY LLC
1919 14th Street, Suite 700
Boulder, CO 80302
dan@gratalegal.com

*Counsel for Defendants iBridge Cloud Technologies, Inc., iBridge Technology Solutions, Inc., Gold Tailings Investments, LLC, Data Center Facilities Management, Inc., and Paul Smitham*

*s/ Salowa Khan*
Allen Vellone Wolf Helfrich & Factor P.C.