**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Case No. 25-cv-00662-CNS-TPO**

Zayo Group, LLC,

Plaintiff,

vs.

Harvey Sender, as Trustee, on behalf of Debtor iBridge Cloud Solutions, Inc.,
iBridge Cloud Technologies, Inc.,
iBridge Technology Solutions, Inc.,
Gold Tailings Investments, LLC,
Data Center Facilities Management, Inc.,
Paul Smitham,

Defendants.

---

Harvey Sender, as Trustee, on behalf of Debtor iBridge Cloud Solutions, Inc.

Counterclaim Plaintiff,

v.

Zayo Group, LLC

Counterclaim Defendant.

---

**ZAYO GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS**

---

Zayo Group, LLC ("Zayo") submits this Reply in Support of its Motion to Dismiss Amended Counterclaims.

## INTRODUCTION

The plain language of the Parties' agreements easily defeats the Trustee's counterclaims. Recognizing this, the Trustee relies on extraneous evidence and

inapplicable legal principles to try and rewrite the Parties' agreements or, at the very least, create ambiguity where none exists. But no amount of proselytizing about what iBridge (and now the Trustee) wished the agreements said in hindsight will support the Trustee's position. Thus, the Court should grant Zayo's Motion.

## **ARGUMENT**[1]

### I. Zayo Did Not Breach the MCA – Counterclaim 1

The Court should dismiss Counterclaim 1 because the MCA did not obligate Zayo to provide a "diverse and redundant network." The Trustee's misunderstanding of what this term means does not render the agreement ambiguous.

**No Diverse and Redundant Network**. The Trustee is correct that the MCA encompasses several documents, including iBridge's Customer Orders, which are all "clearly and expressly identified" as being incorporated in the MCA. (*See* ECF No. 22-2, MCA, Art. 1.1 (identifying all documents incorporated by reference)); *see also Veolia Water Techs., Inc. v. Antero Treatment LLC*, 2024 COA 126, ¶¶ 49-50 ("Whether contract terms have been incorporated by reference into a contract is also a question of law"). When the parties' agreement spans multiple documents, the Court must "construe them together as a single instrument and give effect to all provisions." *Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo. App. 2010). The MCA and Customer Orders defeat Counterclaim 1.

In his Response, the Trustee argues that, when construed as a whole, iBridge's

[1] The Trustee has agreed to dismiss his claim for declaratory judgment, Counterclaim 6. (*See* Resp., at 2 n.1.)

Customer Orders expressly obligate Zayo to provide a "diverse and redundant network." (Resp., at 6.) Yet, to support his position, the Trustee simply cherry picks fragments from two separate Customer Orders and argues, without any support, that "ring" is synonymous with "diverse and redundant network." (*Id.*, at 6-7.) The Court should not be so persuaded.

The fundamental flaw with the Trustee's argument is that he conflates dark fiber cables with Zayo's Wavelengths (i.e., light wavelengths used for transmitting data through the fiber cable), which are two distinct products.[2] While the two products depend on one another, they are not the same as the Trustee suggests. The two Customer Orders (1842647 and 1362999) the Trustee relies on in his Response highlight this critical distinction.

Customer Order 1842647 (ECF No. 22-3, at 9) concerns the purchase of "dark fiber" cables that connect to multiple locations. To do so, those cables must necessarily enter and exit those locations at different (or **diverse**) points to connect to another location. (*See* ECF No. 64, at 7.) The diagrams the Trustee provides in his Response confirm this. (*See* Resp., at 8.) Because the beginning and ending point is the same, the cables form a "ring." (*See id.*) But nothing in Customer Order 1842647 states that this

---

[2] In the fiber-optic transmission industry, wavelengths of light are used to transmit data through a fiber optic communication system across long distances. *See Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, No. CIV.A. 10-487-RGA, 2012 WL 3201701, at *1 (D. Del. Aug. 3, 2012); *see also Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 08 C 3379, 2013 WL 268607, at *1 (N.D. Ill. Jan. 24, 2013). As the Trustee notes, the Court may consider extrinsic evidence of trade usage/industry standard, even if defining "a plain and unambiguous" term. *Emp. Television Enters., LLC v. Barocas*, 100 P.3d 37, 42 (Colo. App. 2004).

"ring" constitutes a "diverse and redundant network"—it is simply the dark fiber cable that connects multiple locations.

Customer Order 1362999 concerns Zayo's Wavelengths—a different product altogether. (ECF No. 84-2, at 1.) As that order makes clear, iBridge purchased a "Point-to-Point," "Private Wavelength Network" that explicitly stated: "Diversity Requirements No." (*Id.*) This is consistent with the discussion of Wavelength configurations in the "Wavelengths Product Overview" the Trustee attaches as Exhibit C to its Response. (ECF No. 84-3, at 2.) A "Standard Wavelength[]" is a "**point-to-point** connection between two locations," which is exactly what Customer Order 1362999 provides, whereas a "Diverse Wavelength[]" is "[t]wo Standard Wavelengths following different paths." (*Id.* (emphasis added).) There was simply no requirement for Zayo to provide a "diverse and redundant network" under Customer Order 1362999, or any Customer Order, and the Trustee's vague reference to what it dubs "redundant equipment" does not counsel otherwise. Thus, the plain language of the MCA and Customer Orders defeats Counterclaim 1.

**No Ambiguity**. Undeterred, the Trustee argues that, at a minimum, the term "diverse and redundant" is ambiguous because the Parties' dispute its meaning. (Resp., at 8-9.) As the above makes clear, this argument is nothing more than a red herring. Indeed, it is well-established that "the mere difference of opinion regarding the interpretation of a term does not itself create an ambiguity." *Ctr. for Legal Advoc. v. Bicha*, No. 11-CV-02285-NYW, 2018 WL 5892669, at *7 (D. Colo. Nov. 9, 2018). At bottom, the Trustee's arguments are a failed attempt to sow ambiguity in the Parties' agreements where none exists. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 833

(10th Cir. 2016) (court may not rewrite or add terms not contemplated by the parties). Thus, the Court should dismiss Counterclaim 1.

## II. Zayo Did Not Breach the Restructure Agreement – Counterclaim 2

The Court should dismiss Counterclaim 2 because the Restructure Agreement did not obligate Zayo to deliver any service within 60 days or to monitor iBridge's network. First, the Trustee concedes that the Restructure Agreement contains no provision whatsoever requiring Zayo to deliver certain services within 60 days. (*See* Resp., at 11.) While the Restructure Agreement incorporates additional documents, the alleged "Zayo Deficiency Memorandum" attached as Exhibit 1 to the Trustee's counterclaims was not one of those incorporated documents. (*Compare* ECF No. 84-1, Restructure Agreement, § 3.11 *with* ECF No. 54-1.) It is axiomatic that the Trustee cannot rely on extrinsic evidence where, like here, the Restructure Agreement clearly and unambiguously refutes the Trustee's position. *See Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000).

Second, even assuming the Restructure Agreement incorporates Customer Order 1478560 as the Trustee contends, that order does not include **any** of the alleged seven categories of "network monitoring" the Trustee identifies in its counterclaims. (*Compare* Resp., at 10 *with* ECF No. 84-4.) Again, the Trustee's position is not tethered to any contractual provision he claims Zayo breached. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) (under Rule 12(b)(6), a plaintiff's allegations "do not overcome contradictory statements in the text of a contract attached to their complaint"). Thus, the Court should dismiss Counterclaim 2.

## III. Zayo Did Not Breach the Duty of Good Faith and Fair Dealing – Counterclaim 3

The Court should dismiss Counterclaim 3 because the Trustee has not identified any contractual provision granting Zayo discretion, which is required for the duty of good faith and fair dealing to apply. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (duty applies only where contract provides discretion to either party). "The concept of discretion in performance refers to one party's power **after** contract formation to set or control the terms of performance." *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1152 (10th Cir. 2023) (emphasis added; quotations omitted) (dismissing breach of good faith and fair dealing claim under Colorado law for lack of discretion). This generally occurs where one party has discretion to set certain terms, such as "quantity, price, or time." *Ervin*, 908 P.2d at 498. This is not one of those situations, as Zayo's performance obligations are dictated by what the **customer** (i.e., iBridge) requests in the applicable Customer Order. (*See* ECF No. 22-2, MCA, Arts. 1.1-1.2.).

None of the Trustee's arguments compels a different result. The Trustee identifies no contractual provision granting Zayo discretion in providing "***peak performance***," assuming such a service even exists. (*See* Resp., at 11-12 (emphasis in original).) As demonstrated above, the same is true of the Trustee's argument regarding "diverse and redundant networks" and "monitoring." (*See id.* at 12.) Indeed, Customer Order 1478560, upon which the Trustee relies, explicitly states: "Diversity Requirements No." (*See* ECF No. 84-4, at 1.) The Trustee also fails to identify any specific instance where Zayo billed iBridge for services not rendered or any contractual provision that allowed Zayo to set "quantity, price, or time" after contract formation. *See Spring Creek Expl. & Prod. Co.,*

*LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1019-20 (10th Cir. 2018) (dismissing good faith and fair dealing claim where agreement did not "'defer' a decision as to the scope of [defendant's performance]; there was no requirement at all").

Ultimately, iBridge (and by extension the Trustee) cannot rely on the duty of good faith and fair dealing to inject new terms into the Parties' agreements simply because iBridge was unhappy with the services it ordered. *See Carson v. Ocwen Loan Servicing, LLC*, 365 F. Supp. 3d 1163, 1170 (D. Colo. 2019) (dismissing good faith and fair dealing claim under similar circumstances). Thus, the Court should dismiss Counterclaim 3.

## IV. Zayo Did Not Commit Fraud – Counterclaims 4 and 5

The Court should dismiss Counterclaims 4 and 5 because the Trustee does not allege any fraudulent conduct, let alone any fraudulent conduct with the requisite particularity under Fed. R. Civ. P. 9(b). The following reasons are all dispositive of Counterclaims 4 and 5.

**No Fraud for Failure to Perform.** The sole basis for the Trustee's fraud claims is that Zayo failed to deliver on its (allegedly false) promise to deliver a "diverse and redundant network" as required under the Parties' agreements. This is demonstrably false and, in any event, does not constitute fraud. *See Brightspot Sols., LLC v. A+ Prods., Inc.*, No. 20-CV-03335-MEH, 2021 WL 1251512, at *7 (D. Colo. Apr. 5, 2021) (no fraud for failure to perform).

The Trustee does not dispute this; instead, he argues that his fraud claims relate to pre-contract misrepresentations. (*See* Resp., at 13.) Even if this were true, the lone paragraph the Trustee identifies in his Response, (ECF No. 54 at p. 32 ¶ 9), falls well

short of identifying the "who, what, when, where, and how of the alleged fraud" required under Rule 9(b). *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010) (dismissing fraud claims for lack of particularity). At most, the alleged (mis)representations constitute mere puffery or an opinion as to future conduct, which are not actionable. *See Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1302-07 (10th Cir. 2022) (dismissing fraud claims based on puffery). Thus, Counterclaims 4 and 5 fail.

**No Duty**. The Trustee fails to allege Zayo owed iBridge a duty to disclose material facts under the circumstances here. In his Response, the Trustee baldly asserts that "[Zayo] did have that duty." (Resp., at 13.) This is insufficient. And *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corporation*, 32 Cal. App. 4th 985, 993 (1995), cited by the Trustee, is unavailing because it concerned an agent's duty to disclose to its principal latent defects during the sale of real property under **California** law. Thus, Counterclaim 5 fails.

**No Justifiable Reliance.** The Trustee's fraud claims also fail because the MCA and Restructure Agreement each clearly and unequivocally disclaim any reliance on all "prior or contemporaneous representations, understandings or agreements," (ECF No. 22-2, MCA, Art. 5.9), **and** "any inducements, promises, or representations whatsoever made by any of the other parties," (ECF No. 22-4, Restructure Agreement, at 6-7.) Colorado courts routinely enforce such disclaimers when dismissing fraud-based claims like those here. *See, e.g.*, *Steak n Shake Enters., Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1083 (D. Colo. 2015) (finding "it [was] simply unreasonable to continue to rely on representations after stating in writing that you are not so relying" (quotations omitted));

*Cahey v. Int'l Bus. Machines Corp.*, No. 20-CV-00781-NYW, 2020 WL 5203787, at *10-11 (D. Colo. Sept. 1, 2020). The Court should find the same here.

In his Response, the Trustee argues "Zayo cannot enforce a contractual disclaimer obtained by fraud" and cites to *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997). (Resp., at 14.) But *Weissman* held that an employer could rescind an **implied employment contract** induced by an employee's fraudulent resume, which has no bearing here. *Weissman*, 938 P.2d at 547. Moreover, the Trustee does not seek to rescind the MCA and/or the Restructure Agreement; just the opposite: he seeks to hold Zayo liable for breaching those agreements.

In a last-ditched effort to avoid the MCA's and Restructure Agreement's clear and express disclaimers, the Trustee argues in the alternative that the "service orders are express warranties and cannot be negated by disclaimers." (Resp., at 14.) But the Trustee has not asserted any claim for breach of express warranty, and it is well-established that a litigant cannot amend its complaint "by adding factual allegations in response to [a] motion to dismiss." *Abdulina v. Eberl's Temporary Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). Further, the MCA explicitly disclaims all warranties, whether express or implied, (ECF No. 22-2, MCA, Art. 4.3), which is permissible under **Colorado** law, *see Boyd v. A.O. Smith Harvestore Prods., Inc.*, 776 P.2d 1125, 1130 (Colo. App. 1989). The Trustee's reliance on non-binding, out-of-jurisdiction caselaw is unavailing. Thus, Counterclaims 4 and 5 fail for a lack of justifiable reliance.

**No Causation.** Finally, the Trustee has not pleaded causation with requisite particularity. *See 1881 Extraction Co. LLC v. Kiinja Corp.*, 660 F. Supp. 3d 1059, 1075 (D.

Colo. 2023). The Trustee's lone, conclusory allegation of causation is insufficient. (*See* ECF No. 54 at p. 65 ¶ 175).)

## V. Zayo Is Not Subject to Equitable Subordination – Counterclaim 7

The Court should dismiss Counterclaim 7 because the Trustee's conclusory allegations that Zayo's "fraud and misconduct" caused injury to unidentified "other creditors" is insufficient for an equitable subordination claim, which is "an extraordinary remedy." *In re Alternate Fuels Inc.*, 789 F.3d 1139, 1154 (10th Cir. 2015). Moreover, the Trustee's subjective disagreement regarding the value of Zayo's claims does not transform Zayo's attempts to hold iBridge liable for its repeated breaches of the Parties' agreements into inequitable conduct that warrants subordination. (*See* Resp., at 14.) Indeed, it is well-established that equitable subordination is not appropriate merely because Zayo exercised "**unilateral remedies that [it] may properly enforce pursuant to its agreements with the debtor**." *In re Castletons, Inc.*, 990 F.2d 551, 559 (10th Cir. 1993) (emphasis added) (no equitable subordination for enforcing contract rights).

Counterclaim 7 also is inconsistent with the Bankruptcy Code. iBridge petitioned for Chapter 7 bankruptcy **two weeks after** Zayo initiated this civil action and did so for the sole purpose of frustrating Zayo's efforts to collect what iBridge owes. iBridge cannot discharge Zayo's debt, it has no assets to liquidate, and its so-called "other creditors" are entities owned and operated by iBridge's President and CEO Paul Smitham—entities Mr. Smitham and the Trustee also seek to shield from liability under the guise of bankruptcy. For these reasons, Zayo has moved to dismiss the Chapter 7 proceedings for cause under 11 U.S.C. § 707(a). (*See* ECF No. 70-1.) Thus, the Court should dismiss

Counterclaim 7.

## CONCLUSION

For the reasons stated herein and those in its Motion to Dismiss, Zayo respectfully requests that the Court grant its Motion to Dismiss and dismiss all of the Trustee's amended counterclaims.

Respectfully submitted this 5th day of September, 2025.

*s/ Nicholas Eaton*
Andrew P. Garnett, Reg. No. 45220
Nicholas Eaton, Reg. No. 49956
Garnett Powell Maximon Barlow & Farbes
1125 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 991-3344
andrew.garnett@garnettlegalgroup.com
nick.eaton@garnettlegalgroup.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 5, 2025, a true and correct copy of the foregoing **ZAYO GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS** was electronically filed using the Court's CM/ECF system, which will provide service to the following counsel of record.

Patrick D. Vellone
Jennifer E. Schlatter
Vandana S. Koelsch
Benjamin Woodruff
Allen Vellone Wolf Helfrich & Factor P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
pvellone@allen-vellone.com
jschlatter@allen-vellone.com
vkoelsch@allen-vellone.com
bwoodruff@allen-vellone.com

*Attorneys for Debtor*

Daniel D. Williams
Matthew A. Simonsen
Meghan Hungate
Grata Law and Policy LLC
4845 Pearl East Cir., Suite 101, PMB #18
Boulder, CO 80301
Telephone: (303) 535-3533
dan@gratalegal.com
matt@gratalegal.com
meghan@gratalegal.com

*Attorneys for Non-Debtor Defendants*

*s/ Tracy Williams*
Tracy Williams